## Ziedman & Pollie, Incorporated, v. City of Ashland.

(Decided May 27, 1932.)

280

H. O. WILLIAMS, SCHWARTZ & WILLIAMS, and J. B. ADAMSON for appellant.

JOHN T. DIEDERICH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The legislative department of the city of Ashland, Ky., enacted an ordinance entitled "Street Fair Ordinance." Its section 1 provided that it should be unlawful for any one to "put on" any fair or carnival within the city without first obtaining a license so to do, and then ordained that the license fee "shall be $1,500.00 per week, payable in advance of the application." Section 2 of the ordinance prescribed that

> "any person who shall conduct or aid or assist in conducting any street fair or carnival without complying with this ordinance shall be guilty of a violation thereof, and subject to a penalty of $100.00 for each day any such person, firm or corporation shall put on, aid or assist in putting on said street fair or carnival shall be guilty of a separate offense."

While the ordinance was in force appellant and plaintiff below, Ziedman & Pollie, a corporation, applied for and obtained a license by paying the fee of $1,500, and thereupon "put on" and operated a street carnival within the city for one week. Later, and on August 12, 1927, it filed this action in the Boyd circuit court against the city to recover the amount of the license fee that it paid to the city under the ordinance upon the ground that it was void for a number of reasons stated in the petition, and that the payment of the license fee by it to the city was involuntary and was a coercive one because of the severe penalties imposed upon it, and its various employees numbering about 40, if the license was not obtained and the fee paid, which latter was a condition precedent to the granting of the license. Some of the grounds alleged for the contention that the ordinance was void were, (1) that the exacted fee of $1,500 per week was and is so grossly excessive as to invalidate the ordinance whether it was enacted as a police measure or as a revenue one, and (2) that there was no provision in it stating the purpose for which the fee or tax was levied and imposed, as is required by section 3175 of the present Kentucky Statutes, which is a part of the charter of cities of the second class to which Ashland now belongs, and also required under the provisions of subsection 12 of section 3290 of the same Statutes, which is a part of the charter of cites of the third class to which Ashland belonged at the time of the passage of the ordinance and the collection of the involved license fee.

Other objections are urged against the validity of the ordinance, but the conclusions we have reached render it unnecessary to either refer to or determine them. The answer denied the material averments of the petition, and, of course, contended that the payment of the license fee sought to be recovered was voluntary on the part of plaintiff, and that it was estopped to maintain the action, even though the ordinance for any reason should be held to be void. Following pleadings and motions made the issues and upon trial a jury was waived, and the cause submitted to the court, who rendered judgment dismissing the petition, and to reverse it plantiff prosecutes this appeal.

Considerable discussion is made in brief for both sides as to whether the ordinance was and is a purely police measure and enacted pursuant to the police power

of the city as delegated to it by the Legislature, or whether it is purely a tax measure enacted for the purpose of raising revenue for the city treasury. Counsel for defendant urges that it is a sort of dual measure enacted both under the police power of the city and also under its power to raise revenue, but we do not deem it material to the disposition of the case for us to decide that question, since we have concluded the amount of the fee is so excessive as to render the ordinance invalid whether it be a police or a revenue measure. If it is a police measure, then the amount charged as a license fee should in some measure correspond to the cost of the issuing of the license and the additional cost of extra police service that might be rendered necessary because of the licensed operation. That principle of law is thoroughly established in this jurisdiction, as will be seen from the cases of City of Henderson v. Lockett, 157 Ky. 366, 163 S. W. 199; Smith v. Commonwealth of Kentucky, 175 Ky. 296, 194 S. W. 367, and City of Mayfield v. Carter Hardware Co., 191 Ky. 364, 230 S. W. 298. Of course, in determining whether the charged license fee, in strictly a police ordinance may not exceed the limits so required, it was not intended, by the rule so announced, to require that the fee should correspond exactly with the rule for its proper measurement. However, those cases do determine and hold that the departure from such measurement should not be so great as to demonstrate its complete ignoring by the legislative body that enacted the ordinance. The evidence heard at the trial by no means convinces us that the extra cost of policing that might be produced because of the operation of the street fair, would in any wise approach the sum of $1,500, the amount charged and fixed in the ordinance in this case.

The same conclusion, it seems to us, is also inescapable, if the ordinance should be considered as exclusively a revenue measure. It is ten times higher than license fees for other public entertainments of a similar nature as contained in other general ordinances of the city. But, whether that fact is a pertinent one that should be considered on the disposition of the instant question is not necessary to be determined, since we held in the case of Sallsbury v. Equitable Purchasing Co., 177 Ky. 348, 197 S. W. 813, 814, L. R. A. 1918A, 1114, that it was competent for the court to nullify an ordinance assessing a license tax on the ground of excessiveness, notwithstanding no

such power existed with reference to the levying and collecting of ad valorem taxes, provided they were within the limits allowed by law. It was also pointed out in that case that those who enact a revenue license tax have a broad discretion as to the amount at which it should be fixed, and that such discretion will not be interferred with by the court, unless the amount is so grossly excessive as to be unreasonable; and that, "ordinarily, and so long as the municipality stays within the bounds of reason, the size of a license fee is a question for its determination, and so long as it exercises a reasonable discretion the courts will not interfere on the ground that the fee is unreasonable or prohibitive." A number of cases in substantiation thereof are cited in the opinion, among which is Tandy & Farleigh Tobacco Co. v. City of Hopkinsville, 174 Ky. 189, 192 S. W. 46.

But, independently of any of the foregoing, the sections of our statute, supra, expressly require that "all taxes and license fees shall be levied or imposed by ordinance and the purpose or purposes for which the same are levied or imposed shall be specified therein," etc. Section 3175. In the Tandy & Farleigh Tobacco Company case, supra, the question as to the sufficiency of the requirement (that the purpose for which the collected fees should be devoted) was involved, and it was held that it was sufficiently complied with when the levying ordinance stated that the fund arising therefrom should constitute a part of the city's general fund. But that case, and the many others therein cited from this court, plainly held that, in the absence of some such provision, in satisfaction of that requirement of the statutes, the ordinance would be invalid. That contention is not seriously contested by learned counsel for the city, but he seeks to avoid it with the counter contention that the ordinance is purely a police regulation, and that the provision with reference to declaring the purpose for which the license fees are levied has no application to those charged for licenses granted under such ordinances. We are cited to no case making that distinction, and the language of the statute prescribing the requirement seems to furnish no ground for drawing it. But, were it otherwise, and we should uphold the distinction so attempted to be made, it could not serve the city in this case, since we have hereinbefore found that the amount of the fee exacted for the license is so excessive as to render the ordinance inoperative as a police measure.

The ordinance being void, the next question is: Whether plaintiff may maintain the action and collect the fees paid by it to the city on the ground that it did so involuntarily, for, if it made such payment voluntarily, the law is well settled that it may not thereafter recover the amount. In the argument of this question, learned counsel for the city cite and comment upon numerous cases from this court arising under section 162 of our present Statutes, which applies exclusively to taxes paid to the state and has nothing whatever to do with taxes wrongfully paid to municipalities. So that, those cases may at once be dismissed as inapplicable to the question involved, and which is: Whether the payment of a license tax, although made without objection, may be considered as a voluntary one when the failure to do so would subject the applicant to prosecutions and fines for each day he operates if the payment is not made, and it is done, as is shown in this case, under the bona fide belief that there existed a valid ordinance requiring the payment of the fee for the privilege granted, and it was done in order to avoid such prosecutions and fines amounting to $100 per day for defendant and each of its employees aiding and assisting it. Therefore, all the cited cases, as well as those not cited, determined by this court relating to voluntary payments of ad valorem taxes, have no application, since different elements enter into their consideration and disposition.

In the case of Bruner v. Town of Stanton, 102 Ky. 459, 43 S. W. 411, 19 Ky. Law Rep. 1514, a question similar to the one we have here was involved. There a fee of $250 had been exacted from Bruner by the town of Stanton as a license to permit him to sell liquor in the town. The ordinance fixing it was invalid, and he later sought to recover it of the town. Judge Hazelrigg in writing the opinion held that, if the ordinance was invalid, as was true in that case, and the payment was made with knowledge of such invalidity, a recovery could not be had. On the contrary, it was therein held that the payment could be recovered by the one who made it, if he did so without knowledge of the facts constituting the invalidity and in the good faith belief that the ordinance providing for its collection was valid. It was also held therein that defendant had no such notice, and that he had a right to assume "that the town trustees but exercised their lawful authority when they passed the ordi-

nance.'' It was furthermore held, quoting from the case of City of Louisville v. Anderosn, 79 Ky. 334, 42 Am. Rep. 220, that ''he [plaintiff] is not presumed to know more than those who constitute the legislative and executive departments of the government under which he lives, whether state or municipal.'' In strict harmony with the Bruner opinion are the cases of Fecheimer Bros. & Co. v. City of Louisville, 84 Ky. 306, 2 S. W. 65, 8 Ky. Law Rep. 310, and Trustees of the Town of Stanford v. Hite, 2 Ky. Law Rep. 386. A still later one to the same effect is that of Spalding v. City of Lebanon, 156 Ky. 37, 160 S. W. 751, 753, 49 L. R. A. (N. S.) 387. The ordinance prescribing the fee in that case was held invalid, and the payer who procured the license and paid the fee afterwards sought to recover it and succeeded.

Many prior cases from this court including those first referred to are cited in the Spalding opinion, and wherein it is made clear that the doctrine of the Bruner opinion supra, has become the settled rule in this jurisdiction. In the Spalding opinion it is pointed out that in some, and perhaps most, jurisdictions, the rule is that money paid under a mistake of fact may be recovered, but when paid under a mistake of law it may not be done, but which latter is contrary to the applicable rule in this commonwealth, and which the Spalding opinion points out in this language: ''But to this general rule the decisions of this court form an exception, since it has long been settled in this state that money paid under a mistake of law may be recovered. And, since one is much more inclined to make a mistake of law than a mistake of fact, the wisdom of the Kentucky rule would seem apparent to every one. One of the modifications to this Kentucky rule, however, is that illegal taxes paid voluntarily may not be recovered; but, if they are paid under compulsion which exists whenever they are collectible by summary process of fine and imprisonment, they come within the general rule and may be recovered. When taxes can be collected by suit only, and are voluntarily paid, an action to recover them cannot be maintained. L. & N. R. Co. v. Hopkins County, 87 Ky. 605, 9 S. W. 497, 10 Ky. Law Rep. 806; L. & N. R. Co. v. Commonwealth, 89 Ky. 539, 12 S. W. 1064, 11 Ky. Law Rep. 734; German Security Bank v. Coulter, 112 Ky. 577, 66 S. W. 425, 427, 23 Ky. Law Rep. 1888.''

It is also shown in that opinion, based upon prior ones therein cited, that a payment, though made without objection, is nevertheless an involuntary one so as to entitle the payer to recover it in a subsequent action, if the ordinance levying the fee is invalid and if made under compulsion, "which exists whenever thay are collectible by summary process by fine or imprisonment," and that when payment is made under such conditions it is involuntary "within the general rule and may be recovered."

The case of City of Maysville v. Melton, 102 Ky. 72, 42 S. W. 754, is an illustration of the opposite rule denying the right of recovery in such cases when the payment is made with full knowledge of the facts, as well as knowledge of the invalidity of the ordinance and the total absence of the right of the city to demand the fee. In this case, plaintiff, at most, was laboring under a mistake of law, and which led it to the bona fide belief that payment of the $1,500 demanded of it could be coerced, and, if not paid, it would be subject to the penalties of the ordinance for each day it operated its street fair. Clearly, under the Spalding and prior cases, it is given the right to recoup the fees it paid from the city and which it sought to do in this action, and the court erred in denying it that relief.

Wherefore the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.

The whole court sitting.