## Jones v. City of Paducah et al.

June 28, 1940.

Joe L. Price, Judge.

Boyd & Boyd for appellant.

Adrian H. Terrell for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

Pursuant to the authority of Section 274x-1 et seq., Kentucky Statutes, the Board of Commissioners of Paducah set up a Municipal Housing Commission in June, 1938. See Spahn v. Stewart, 268 Ky. 97, 103 S. W. (2d) 651.

This suit is prosecuted by Dr. F. A. Jones, a taxpayer, to enjoin the payment of money and the carrying out of a contract between the City of Paducah and the Commission for slum clearance projects. Both the subject matter of several measures and the procedure observed in their enactment are questioned. The circuit court, upon the pleadings and exhibits, dismissed the petition and the plaintiff appeals.

The apportionment and appropriation of public funds by the City Commissioners for the year 1938 specified a contingent fund of $5,260 for the finance department. On June 18th, by ordinance, there was appropriated $1,000 of the contingent fund to the Housing Commission. On August 22nd, by motion, $1,500 was "set aside" out of that fund, and on September 28th, by motion, the request of the Housing Commission for "an additional loan of $750.00" was granted, to be paid out of the contingent fund. The validity of these measures is questioned in the petition and judgment asked against the members of the City Board of Commissioners to recover the amount into the treasury. The alleged illegality is based upon the proposition that the measures did not lie over one week before adoption as is required

by Section 3235dd-42, Statutes, and upon several other grounds. It appears that these sums were advancements to the Housing Commission for preliminary work. The allegations of the answer are not controverted that only $2,800 was paid out under these proceedings and that it all had been paid back. The questions are, therefore, moot and it is unnecessary to pass upon them.

On September 19, 1938, there was introduced and adopted, without having laid over a week, an ordinance entitled, "An ordinance agreeing to a form of cooperation agreement between the City of Paducah, Kentucky, and the City of Paducah Municipal Housing Commission and authorizing its execution." The preamble of the ordinance states the purposes and plans of the Housing Commission and the benefits to be derived by the city therefrom. It was then ordained that for the purpose of aiding the Housing Commission in the development the City shall cooperate with it by furnishing municipal service and facilities for the projects and the tenants of the building and that the city enter into a contract with the Housing Commission which is embodied in the ordinance. The contract also contains a preamble of several paragraphs. One of them is:

"Whereas, the United States Housing Act of 1937, as amended [42 U. S. C. A. sec. 1401 et seq.], provides that no part of such annual contribution by the USHA shall be made available for any project unless and until the state, city, county, or other political subdivision in which such project is situated, shall contribute in the form of cash or tax remissions, general or special, or tax exemptions, at least twenty per centum (20%) of such annual contributions."

Another "Whereas" paragraph refers to the Kentucky Constitution and statutes, particularly with respect to tax exemptions and to the benefits to be derived by the city from the projects and improvements. In consideration of those premises, the agreement was made between the city and the commission. In the contract the city agreed that it would not levy, impose or charge any taxes of any kind against the projects or for or with respect to them "during the period of physical usefulness and in no event less than the number of years during which any of the obligations issued to assist the

development of the projects shall remain outstanding."
Only the other sections of the contract which are challenged in appellant's brief need be considered.

Paragraph 4 provides that the city shall furnish
and maintain in good repair without cost or charge to
the Housing Commission or the tenants of the building
"municipal services, improvements and facilities for
the projects and the tenants thereof of the same character as those furnished for other dwellings," some of
which are specified. This is but a declaration of what
the city would have to do without the contract. It imposes no additional obligation. Therefore, it cannot
of itself be legally objectionable. It is grouped with
other sections of the contract by the appellant to sustain
his argument that the ordinance was intended to constitute a contract to expend more than $1,000; therefore, that it was within the class of legislation covered
by Section 3235dd-42 of the Statutes and required to
remain on file one week before being finally adopted.
The statute was not observed in enacting the ordinance.
Since, as we shall state, we do not regard the contract
as undertaking to bind the city absolutely to the expenditure of any sum of money, the point disappears from
the case.

Paragraph 13 of the contract is in part:

"To the extent permitted by the laws of the state,
the city shall * * * close and vacate any streets and
alleys within the boundary of the projects, the
land area of which may be necessary in the proper
development of the projects."

The point is made that this obligates the city to close
and vacate streets and alleys, whereas under the statute
it cannot do so except by an action in court, with payment for damages to owners of abutting property. It
is to be noted that this commitment is only "to the extent permitted by the laws of the state." The statutes
in relation thereto become an essential part of the contract by reference.

The plaintiff pleads that the contract requires or
undertakes to require the city, without condition, to contribute or pay 20% of whatever annual contribution the
Federal government may choose to make to the project
in the future. This, it is submitted, brings the contract

within the terms of the procedural statute, Section 3235dd-42 referred to; makes it void because of the restrictions of Section 157, Kentucky Constitution, prohibiting the incurrence of debt in excess of the city's income or revenue provided for each year, and Section 3070 of the Kentucky Statutes of like effect; also because it increases the debt of Paducah which it is claimed is already in excess of the limitation prescribed by Section 158 of the Constitution.

We have outlined the contract showing that the reference to the 20% contribution is in the preamble only. Like the preamble of a legislative measure, a "Whereas" clause of a contract is but an introductory or prefatory statement meaning "considering that" or "that being the case." Webster's New International Dictionary. It explains the reasons inducing the execution of the contract and perhaps describes its purposes or objects. The recital may be resorted to as an aid in construction or interpretation, but it is not an essential part of the operative portions of the contract. 17 C. J. S., Contracts, sec. 314. See 25 R. C. L. 775, 1030; Scott v. McCreary, 148 Ky. 791, 147 S. W. 903. In its broad aspect the ordinance and the contract only constitutes the authority, or perhaps only an encouragement, of the Housing Commission to proceed with the development. The definite and absolute commitment of the city is confined to tax exemption. Appellant illustrates his point of the creation of a debt by suggesting that if the United States Housing Authority should determine to make an annual contribution to the Paducah Housing Commission of $50,000, the ordinance requires the city to contribute $10,000. If that were true the point would be well taken. But this record does not disclose any such mandatory requirement. The contract of the Municipal Housing Commission with the United States Housing Authority is not referred to or made a part of this record. We have only the preamble of the contract and that does not contain any obligation on the part of the city. It would seem merely to suggest a contingent condition, namely, that if the Federal body should offer the contribution it would be conditional on the city contributing its share. It is recited that the city's contribution may be in the form of cash or tax exemptions as authorized by the terms of Section 170 of the Kentucky Constitution, prescribing exemption

from taxation of public property used for public purposes, and of Section 4026, Kentucky Statutes, of like effect, together with the interpretation of the Municipal Housing Act declared in Spahn v. Stewart, supra. The ordinance proceeds then to establish the exemption. The burden was upon the plaintiff to show that this would not be the equivalent of 20% of any proposed annual contribution. If it may be supposed that the taxing exemption would not be enough in any given year, then we have the proposition that if at the time the city cannot meet the terms of the Federal offer because of its financial conditions it will end the matter or reduce the Federal subsidy.

This conception of the contract—that it does not bind the city to expend any money—takes out of the case other questions raised, including the contention that the circuit court should have required the defendants to have answered interrogatories annexed to the petition which related to the city's financial status.

The judgment is affirmed.