**UNITED DRY FORCES, et al., Appellants,**

v.

**CITIZENS FOR A PROGRESSIVE COMMUNITY, etc., et al., Appellees.**

Supreme Court of Kentucky.

July 6, 1982.

Robert L. Woolery, II, William P. Emrick, McKenzie, Woolery & Emrick, P. S. C., Richard W. Martin, Johnson, Dunnigan & Martin, Roger W. Hall, Adkins, Hall, Howell & Duggan, P. S. C., Ashland, for appellees.

Edward F. Prichard, Jr., W. Patrick Stallard, Prichard & Stallard, Frankfort, H. G. Baldridge, Ashland, for appellants.

STEPHENS, Justice.

The primary issue we address is whether the City of Ashland, in the process of adopting an ordinance, followed the proper statutory procedure in declaring the existence of an emergency, thus obviating the necessity of a second reading.

This particular litigation had its genesis in, and is a continuation of, the case of *United Dry Forces v. Lewis,* Ky., 619 S.W.2d 489 (1981). This action was filed by appellants on September 1, 1981, challenging the validity of Ordinance No. 66, 1981, of the City of Ashland. The ordinance, enacted pursuant to KRS 242.1292, designated four precincts in the city as limited sale precincts for the sale of alcoholic beverages. KRS 242.1292 et. seq.[1]

The complaint alleged that KRS 242.1292 is unconstitutional as special legislation. The ordinance itself was challenged as violative of KRS 83A.060, in that it was not enacted on two separate days and there was

---

1. In our initial opinion, rendered June 16, 1981, we ruled that KRS 242.1292 was unconstitutional, in its entirety. On July 6, 1981, we modified the opinion to declare that only Section 10(b) of the statute was invalid. On September 1, 1981, we denied petitions for rehearing, and thus finalized the opinion, as modified. On June 27, 1981, nine (9) days prior to the modification by this Court, the ordinance in question was enacted.

no named and described emergency which would have allowed the city Board of Commissioners to dispense with the second reading. The trial court ruled that the ordinance did adequately name and describe an emergency, and that our decision in the *Lewis* case, *supra*, had made a conclusive determination of the constitutionality of KRS 242.1292 precluding further attack. Upon the filing of a notice of appeal, we transferred the case to this Court. CR 76.-18.

## WAS THE CITY OF ASHLAND'S ORDINANCE NO. 66, 1981 ENACTED IN COMPLIANCE WITH KRS 83A.060?

KRS 83A.060 sets out the form and procedure which shall be followed in the enacting of city ordinances. The relevant sections are as follows:

(4) Except as provided in subsection (7) of this section, no ordinance shall be enacted until it has been read on two (2) separate days. . . .

(7) In an emergency, . . . a city legislative body may suspend the requirements of second reading and publication for an ordinance *by naming and describing the emergency in the ordinance.* (emphasis added).

The city legislative body may forego the second reading (or publication) if an emergency exists and if the particular emergency is named and described in the ordinance.

In the present ordinance Section 8 states, "An emergency exists, therefore the Board of Commissioners hereby suspends the rule requiring a second reading of the ordinance on a separate day." Aside from this one reference, there is no emergency named or described in the text of the ordinance. However, in the preamble to the ordinance, there is a lengthy description of facts and conditions which purport to name and describe the emergency.

We are thus confronted with two sub-issues: (1) for purposes of determining whether an emergency has been named and described, within the requirements of KRS 83A.060(7), may the preamble be considered, and, (2) assuming that the answer to that question is in the affirmative, is the "emergency" described in this case of such a nature as to permit a waiver of the second reading requirement?

(1) May the Content of the Preamble of a City Ordinance be Used in Determining Whether an Emergency Exists?

■ Appellants argue that under Kentucky law the preamble is not an operative part of any legislative enactment. They rely on *City of Elizabethtown v. Cralle*, Ky., 317 S.W.2d 184 (1958). In that case the city of Elizabethtown, as part of its plan to own and operate a water and sewage system and a natural gas system, enacted an ordinance which established a Municipal Utilities Commission, whose appointed members would operate the companies. The preamble to the ordinance stated that one of the purposes of the commission was to operate the companies in a non-political manner. Revenue bonds were sold to finance the operation. A successor city commission repealed the ordinance, in effect returning management to the "political" city commission. A representative bondholder filed suit attacking the validity of the repealing ordinance, claiming that the first ordinance (including the preamble) either contractually bound the city to keep a "non-political" commission or that since the bondholder had relied on the ordinance, the city was estopped from abolishing the commission.

We decided that if the city was to be bound by a contract or by estoppel, the basis of such liability could not be contained in the preamble of the ordinance. We did not decide that the preamble is not part of any legislative enactment. Preambles to ordinances are described as ". . . representative of the reasons, honestly and truthfully expressed," which led to the enactment of the ordinance.[2] *Cralle, supra,* at p. 187.

---

**2.** Although it is not necessary to overrule *Cralle* for the decision in this case, it can be argued that the exclusion of a preamble to an ordinance, even for the limited purpose set forth in *Cralle*, is error. It would seem that the use of the preamble to determine the intent of the legislative body for *all* purposes would be more valid and reflective of legislative intent

The title and preamble are parts of an ordinance. The preamble is a prefatory statement, an explanation or a finding of fact by the municipal legislative body, to show the purpose, reason or occasion for enacting the ordinance. 56 Am.Jur.2d, Municipal Corporations, Sec. 347. The preamble may be used to aid in the interpretation of the ordinance to which it is affixed, and may be used for purposes of *clarification. Id.*, Sec. 404.

Unlike *Cralle*, the ordinance in question does not involve an attempt to bind the city by contract or estoppel. The city, in Section 8 of the ordinance, made a naked declaration that an emergency existed. Standing by itself, this provision clearly does not meet the requirements of KRS 83A.060(7) in that it does not *describe* the emergency. However, the preamble does, in some detail, describe the emergency. We believe that under the principles described above, the preamble clarifies and explains the reference to the emergency in the body of the ordinance. It is a finding of fact and an explanation of the reasons for the adoption of the ordinance (including the details of the emergency). We decide, therefore, that the use of the preamble to detail the declaration of emergency is proper.

> (2) Does the Ordinance, Including the Preamble, Adequately Describe an Actual Emergency?

Appellants argue that even if a preamble may be used to describe an emergency, this preamble does not adequately describe an emergency within the meaning of KRS 83A.060(7). In effect, appellants urge that this Court "second guess" the local city commission in what it legislatively believes to be an emergency.

Our decision in the *Lewis* case invalidated a local option election in several voting precincts of the City of Ashland. The intent of the legislature in enacting KRS 242.1292 was to allow the sale of alcoholic beverages to relieve economic distress. Confronted with our decision, and confronted with what the Board of Commissioners deemed to be economic distress, the commissioners want-

ed to order, *post haste*, an election which they believed would alleviate the economic distress. In the preamble to the challenged ordinance the emergency was described in some detail:

. . . . .

"WHEREAS, significant commercial and business activities pursuant to the results of said election have been licensed and have been commenced in the four limited sale precincts in the central business district in the City of Ashland, including but not limited to the establishment of wholesale and retail by-the-drink sales of alcoholic beverages, the revitalization of long established businesses and the establishment of new enterprises, and

"WHEREAS, said activity has to date contributed to the improvement of the general trade, business and economy of the four limited sale precincts and of the community of Ashland in general, and

"WHEREAS, the Board of Commissioners budgeted for fiscal year 1981 anticipated revenue of $125,000 attributable to tax receipts from licenses and sales of beverages, and

"WHEREAS, the Supreme Court of Kentucky has declared KRS 242.1292 to be unconstitutional because of the inclusion of subsection 10(b) which allows for the designation of limited sale precincts upon petition submitted by the voters in said precincts, and

"WHEREAS, KRS 242.1292 may be constitutional even under this ruling if the determination of economic hardship required by subsection (2) of the statute is made pursuant to subsection 10(a) of the statute, and

. . . . .

"WHEREAS, the aforementioned petitions were an expression by the voters of their recognition of economic hardship in the four precincts, and

"WHEREAS, if the entire ordinance and election process were to have to be repeated, which is, however, hereinafter

than the use of artificial, court-created rules of construction.

provided for and approved, there would result further delay in the implementation of the will of the people expressed in the October 1980 election, and there would be further economic hardship and damage to the general trade, business and economy of the four aforementioned precincts and the general community of Ashland, and

"WHEREAS, among the damaging effects of such an occurrence would be the delay and perhaps the end of a general project to rebuild and revitalize the central business district of Ashland, which project has already been delayed by the legal challenge to KRS 242.1292, and

. . . . .

The Board of Commissioners found that any further delay in holding the election would add to the economic woes of the city. The previous granting of beverage licenses and the resulting sales had begun the "revitalization of long established businesses" and the creation of new businesses. Over $125,000 of additional tax revenue would flow into the city treasury. The commission concluded that delay would cause more economic hardship to Ashland. The Board of Commissioners saw this as an emergency which justified the waiving of the second reading of the ordinance.

The affixing of an emergency clause to an ordinance, alone, does not make the ordinance an emergency measure within the meaning of the law. Many courts have held that a declaration in an ordinance of an emergency is not conclusive. Kentucky follows this rule. *Kentucky Utilities Co. v. Ginsberg*, 255 Ky. 148, 72 S.W.2d 738 (1934). However, a court will not substitute its judgment for that of a duly constituted legislative body, and presumptively we view such ordinances as being a valid exercise of a local legislative prerogative. *Trivette v. Mullins*, 308 Ky. 751, 215 S.W.2d 860 (1948). Applying these principles to the text of the ordinance, we believe that declaration of an emergency by the Board of Commissioners of the City of Ashland was proper.

IS KRS 242.1292 UNCONSTITUTIONAL AS SPECIAL OR LOCAL LEGISLA-

TION IN VIOLATION OF SECTIONS 59 AND 60 OF THE KENTUCKY CONSTITUTION?

Appellants have again asked this Court to declare KRS 242.1292 unconstitutional as special legislation. In the *Lewis* case, *supra*, we specifically held, that ". . . with the exception of Section (10)(b), KRS 242.1292 is constitutional." *Id.*, at p. 493. Having thus clearly stated our position, we are not persuaded that we were in error in the *Lewis* case.

The judgment is affirmed.

All concur.